

# NUMBER 13-07-568-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**SHELDON WHATLEY,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

### On appeal from the 94th District Court
### of Nueces County, Texas

## MEMORANDUM OPINION

### Before Justices Yañez, Garza, and Vela
### Memorandum Opinion by Justice Vela

A jury found appellant, Sheldon Whatley, guilty of five counts of aggravated sexual

assault of a child,[1] two counts of indecency with a child,[2] six counts of prohibited sexual

---

[1]*See* TEX. PENAL CODE ANN. § 22.021(a) (Vernon Supp. 2008).

[2]*See* TEX. PENAL CODE ANN. § 21.11(a) (Vernon 2003).

conduct,[3] and two counts of sexual assault.[4] The jury assessed his punishment at life imprisonment for each count of aggravated sexual assault of a child, twenty years' imprisonment for each count of indecency with a child, ten years' imprisonment for each count of prohibited sexual conduct, and twenty years' imprisonment for each count of sexual assault. The jury assessed a $10,000 fine for each offense, totaling $150,000. The trial court granted Whatley's motion for new trial with respect to the six counts of prohibited sexual conduct, but denied the motion for new trial on all remaining counts.

In five issues, Whatley argues the trial court (1) erred in excluding his exculpatory polygraph results, (2) erred in refusing to grant a mistrial, (3) applied the wrong standard when it excluded his polygraph results, (4) erred in denying his motion for new trial with respect to the remaining convictions, and (5) violated his right to the presumption of innocence. We affirm.

Whatley does not challenge the legal or factual sufficiency of the evidence to sustain his convictions. As this is a memorandum opinion, and the parties are familiar with the facts, we will not recite them here except as necessary to explain the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

### I. Exclusion of Polygraph Evidence

In his first issue, Whatley contends Detective Michael Hess's testimony "opened the door" to controverting evidence that Whatley had taken and passed polygraph tests relating to each of the allegations against him. At the guilt-innocence phase, Detective Hess testified that he had worked 26 years for the Corpus Christi Police Department and had

---

[3]*See* TEX. PENAL CODE ANN. § 25.02(a) (Vernon Supp. 2008).

[4]*See* TEX. PENAL CODE ANN. § 22.011(a) (Vernon Supp. 2008).

2

worked on child sexual abuse cases for twelve years. He provided the context of the offenses alleged against Whatley as well as an overview of the investigation. On re-cross-examination, defense counsel asked him:

> Q. What you just testified to, Detective Hess, do you ever spend time alone with any of the people that have made these accusations?
>
> A. The children?
>
> Q. Uh-huh. Do you ever spend one on one time alone with these children where there's no one else to witness what happens?
>
> A. I hate saying do you ever as because I have, but it's not—it's not a common occurrence.
>
>     \* \* \*
>
> Q. What do you do to protect yourself from these very same allegations being placed upon you?
>
>     \* \* \*
>
> A. I understand. Somebody saying that I touched them or whatever?
>
> Q. Yes.
>
> A. It never really occurred to me . . . .
>
> Q. How would you prove yourself innocent?
>
> A. Me, I'd run down [and] take a polygraph. I'd have no problem doing that. I mean, you made an allegation about me. I'd be banging on the door of a polygraph operator saying, come here, hook me up.
>
> Q. And then what if you took the polygraph and passed and you were still charged with the offense?
>
> A. I can't imagine that. Why would I get charged if I passed a polygraph? I mean, you—you—if we went to a courtroom, beyond a reasonable doubt. My defense attorney would be saying, Your Honor, my client took a polygraph and he passed and why are we here.
>
> Q. So it's your policy with the cases that if the accused would take a polygraph and pass, that that case should be not charged, it should not go before the jury?

A.    You said it's my policy.  I don't get to make that decision.  I present my case to the prosecutor and the prosecutor decides whether those cases go or not.  I've never taken a case where the guy passed a polygraph prior to trial, but I don't get to make the decision whether this case goes to the jury or not.  Those go to the prosecutor's office.

Q.    But if it was you yourself that was the defendant, you'd want the jury to know that information?

A.    Oh, yeah, but hopefully it wouldn't get that far.  I'd be exonerated because I took the polygraph and the prosecutor realizes there's not a case, you know, whatever.

At this point, defense counsel passed the witness.

After hearing the testimony of Detective Hess, the jury heard the testimony of four other State's witnesses.  Afterwards, outside the jury's presence, defense counsel asked the trial court to allow him, in response to Detective Hess's testimony, to introduce evidence that Whatley had taken and passed three polygraph tests.  The trial court denied admission of this evidence, but allowed counsel to make a bill of exception.

*A. Standard of Review*

A trial court's ruling admitting or excluding evidence is reviewed on appeal for abuse of discretion.  *Ramos v. State*, 245 S.W.3d 410, 417-18 (Tex. Crim. App. 2008).  We will uphold the trial court's ruling if the record reasonably supports the ruling, and the ruling is correct under any theory of law applicable to the case.  *Id*. at 418.

*B. Admissibility of Polygraph Evidence*

Counsel could not introduce Whatley's polygraph-test results because "[t]he existence and results of a polygraph examination are inadmissible for all purposes." *Tennard v. State*, 802 S.W.2d 678, 683  (Tex. Crim. App. 1990) (per curiam); *Castillo v. State*, 739 S.W.2d 280, 293 (Tex. Crim. App. 1987) (consistent holding of the court of

4

criminal appeals is "that evidence of the results of a lie detector or polygraph test is not admissible on behalf of either the State or the defense"). The court of criminal appeals recently confirmed this rule. *Nesbit v. State*, 227 S.W.3d 64, 66 n.4 (Tex. Crim. App. 2007) (stating that the results of a polygraph test are not admissible in a Texas criminal proceeding).

Whatley contends that the State "opened the door" to the introduction of his polygraph results through its witness, Detective Hess. In certain limited instances, polygraph evidence, which was erroneously admitted at trial, has "opened the door" to further inadmissible evidence regarding the polygraph results. *Long v. State*, 10 S.W.3d 389, 398-99 (Tex. App.–Texarkana 2000, pet. ref'd); *Hoppes v. State*, 725 S.W.2d 532, 536 (Tex. App.–Houston [1st Dist.] 1987, no pet.); *see Lucas v. State*, 479 S.W.2d 314, 315 (Tex. Crim. App. 1972).

We need not address Whatley's argument, however, because he failed to object to Detective Hess's testimony regarding the consequences of passing a polygraph exam. To preserve error, it has been consistently held that one must object each and every time inadmissible evidence is offered. *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003). This rule applies to testimony regarding polygraph examination results. *See Long*, 10 S.W.3d at 399 ("when a party should have objected to the introduction of inadmissible evidence that was presented, but failed to do so, that party has not been allowed to present additional improper evidence under the guise of rebuttal"), *Cano v. State*, No. 13-00-106-CR, 2001 Tex. App. LEXIS 4707, at *5-6 (Tex. App.–Corpus Christi July 21, 2001, no pet.) (mem. op. not designated for publication) (holding appellant failed to preserve error by failing to object to inadmissible polygraph evidence). We conclude Whatley failed

to preserve error because he did not make a timely objection.  *See Long*, 10 S.W.3d at 399.  Issue one is overruled.

## II. Denial of Whatley's Motion for Mistrial

In his second issue, Whatley argues the trial court erred when it overruled his motion for a mistrial.  After the State rested its case at the guilt-innocence phase, defense counsel, outside the jury's presence, asked the trial court to instruct the jury to "disregard any previous testimony concerning a lie detector test. . . ."  The trial court denied the request.  Counsel then asked for a mistrial, which the trial court denied.

### A. Standard of Review

We review a trial court's denial of a motion for mistrial for abuse of discretion. *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004); *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999).  To constitute an abuse of discretion, the trial court's decision must fall outside the zone of reasonable disagreement.  *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004).  Only in extreme circumstances, when the prejudice is incurable, will a mistrial be required.  *Hawkins*, 135 S.W.2d at 77.

### B. Timeliness of the Motion for Mistrial

"In accordance with Rule 33.1, a motion for mistrial must be both timely and specific."  *Griggs v. State*, 213 S.W.3d 923, 927 (Tex. Crim. App. 2007).  "A motion for mistrial is timely only if it is made as soon as the grounds for it become apparent."  *Id*.  An untimely motion for mistrial will not preserve a complaint for appellate review.  *Duffey v. State*, 249 S.W.3d 507, 510 (Tex. App.–Waco 2007, pet. ref'd) (citing *Young v. State*, 137 S.W.3d 65, 70 (Tex. Crim. App. 2004)); *see Wilkerson v. State*, 881 S.W.2d 321, 326 (Tex. Crim. App. 1994).

In this case, the objectionable nature of Detective Hess's testimony was apparent as soon as he said he would have taken a polygraph exam. *See Jasso v. State,* 112 S.W.3d 805, 813 (Tex. App.–Houston [14th Dist.] 2003, pet. ref'd). Yet, Whatley waited until the State rested before requesting either an instruction to disregard or a mistrial. Whatley's motion for mistrial was therefore untimely and failed to preserve his complaint for appellate review. *See Duffey*, 249 S.W.3d at 510.

Even assuming Whatley had timely requested the motion for mistrial, we do not believe the trial court abused its discretion in denying the motion. When a polygraph exam is mentioned at trial and defense counsel requests a mistrial, the reviewing court must first determine whether the examination results were revealed to the jury. *Jasso,* 112 S.W.3d at 814. In the case before us, no polygraph results were mentioned to the jury. When a witness gives an unresponsive answer that mentions a polygraph test, but does not mention the results of the test, there is no error in failing to grant a mistrial. *Barker v. State*, 740 S.W.2d 579, 583 (Tex. App.–Houston [1st Dist.] 1987, no pet.) (citing *Richardson v. State*, 624 S.W.2d 912, 914-15 (Tex. Crim. App. 1981)); *see Tennard*, 802 S.W.2d at 684.[5]

---

[5]In *Tennard*, the record showed that Officer Maxey had originally arrested Fred Stewart for using one of the victim's credit cards. *Tennard v. State*, 802 S.W.2d 678, 682 (Tex. Crim. App. 1990) (per curiam). Stewart implicated Paul Bogany in the offense, and Bogany implicated the defendant. *Id*. Officer Maxey later arrested the defendant. *Id*. The State called Officer Maxey to testify about the defendant's arrest. *Id*. Afterwards, defense counsel tried to discredit Officer Maxey's testimony concerning his opinion of Stewart's veracity. *Id*. In relevant part, counsel asked Officer Maxey, "But at any rate, you believed Fred Stewart, with all his offenses and all the other involvement you had concerning Fred Stewart?" *Id*. at 683. To which Officer Maxey replied, "*Plus I gave him a polygraph test, which confirmed his story, which he passed.*" *Id*. (emphasis in original). Defense counsel timely objected to this testimony. *Id*. The trial court sustained the objection, instructed the jury to disregard the testimony, but denied counsel's request for a mistrial. *Id*. The court of criminal appeals stated:

> At most, the mention of the polygraph exam served to lend Stewart's trial testimony more credibility. The majority of his testimony dealt with [the defendant's] possession of the deceased's property. The State produced several other witnesses who testified to [the

Whatley argues that because an instruction to disregard Detective Hess's testimony would have been inadequate, the trial court should have granted the mistrial. We disagree. When a witness on direct or cross examination testifies that either a polygraph exam or lie detector test was either offered or taken, an instruction to disregard the reference to the exam is sufficient to cure any harm. *See Tennard*, 802 S.W.2d at 684; *Hannon v. State*, 475 S.W.2d 800, 803 (Tex. Crim. App. 1972);[6] *Renesto v. State*, 452 S.W.2d 498, 500 (Tex. Crim. App. 1970);[7] *Roper v. State*, 375 S.W.2d 454, 457 (Tex. Crim. App. 1964);[8]

---

defendant's] possession of the stolen merchandise, corroborating Stewart's version of events.

Under the circumstances, despite the existence of trial error in this instance, we find beyond a reasonable doubt that said error made no contribution to the verdict or to the punishment.

*Id*.

[6]In *Hannon v. State*, the defendant contended the trial court erred in failing to grant his motion for a mistrial after a State's witness, Bobby Jean Jordan, stated during cross-examination that a police officer had given her a lie detector test. 475 S.W.2d 800, 803 (Tex. Crim. App. 1972). Specifically, defense counsel asked Jordan, "Did you go down to the police station of your own free will and talk to them?" She replied, "[W]hen I got down there, Lt. Sinclair asked me if I would go down with him and he questioned and I told him yes and we went down to some room and he questioned me and then he put me on the lie detector test and after that he–". *Id.* The results of the test were never mentioned. *Id.* The trial court sustained the objection to the answer but denied the motion for mistrial. *Id.* The court of criminal appeals stated, "In light of the prompt ruling of the court and the instruction to the jury to disregard the testimony, no reversible error is shown." *Id.*

[7]In *Renesto v. State*, the defendant complained the trial court erred in failing to grant a mistrial when a State's witness, Carey Dulaney, stated he had taken a polygraph test. 452 S.W.2d 498, 500 (Tex. Crim. App. 1970). Specifically, the State's attorney asked Dulaney, "Now the following day did you go anywhere with any Fort Worth police officer?" He replied, "Well, I went downtown at eight o'clock in the morning and took a polygraph test. . . ." *Id.* The results of the test were never mentioned. *Id.* The trial court sustained the objection and instructed the jury to disregard the answer. *Id.* The court of criminal appeals stated that "[U]nder the circumstances presented, we perceive no reversible error." *Id.*

[8]In *Roper v. State*, the defendant contended reversible error occurred when the prosecutor asked Detective Grimes, "Mr. Grimes, on Monday night that the defendant was at the police station, did you take him anywhere?" 375 S.W.2d 454, 456 (Tex. Crim. App. 1964). He replied, "Yes, sir." *Id.* Next, the prosecutor asked him, "Where was that?" He answered, "We carried him and run a polygraph test." *Id.* At that point, defense counsel objected and asked for a mistrial. *Id.* The trial court instructed the jury to disregard the answer, but denied the motion for mistrial. *Id.* at 456-57. The results of the polygraph test were not mentioned. *Id.* at 457. The court of criminal appeals stated that the trial court "properly instructed the jury not to consider the answer for any purpose and thus no reversible error is reflected." *Id.*

8

*Gregory v. State*, 56 S.W.3d 164, 174 (Tex. App.–Houston [14th Dist.] 2001, pet. ref'd).[9]

A trial court errs in denying a motion for mistrial only in an "extreme case where the testimony was clearly calculated to inflame the minds of the jury to the point of rendering any curative instruction useless." *Williams v. State*, 798 S.W.2d 368, 373 (Tex. App.–Beaumont 1990, no pet.).[10] Detective Hess's testimony was not clearly calculated to inflame the minds of the jury to the point of rendering any curative instruction useless, especially since he did not mention that Whatley had taken polygraph tests, much less the results of those tests. Accordingly, the trial court did not abuse its discretion in failing to grant a mistrial. Issue two is overruled.

### III. Standard for Excluding Polygraph Evidence

In his third issue, Whatley contends the trial court excluded his polygraph evidence without considering its admissibility pursuant to the rules of evidence, but instead relied on "Texas'[s] per se rule of exclusion" with respect to polygraph evidence. In *Ross v. State*,

---

[9]In *Gregory v. State*, defense counsel asked a police officer, "Well, you talked to the parties or the complainants, and then did you go to the D.A.'s office?" 56 S.W.3d 164, 172 (Tex. App.–Houston [14th Dist.] 2001, pet. ref'd). The officer replied, "No. Actually, I had asked the defendant if he wanted to take a polygraph." *Id*. Defense counsel objected to the polygraph reference, asked for an instruction to disregard, and moved for a mistrial. *Id*. The trial court twice instructed the jury to disregard, but denied the motion for mistrial. *Id*. On appeal, the defendant argued the trial court erred in denying the motion for mistrial because (1) "the officer's testimony was a 'clear implication . . . [the defendant] either failed or refused,' the polygraph exam;" (2) no instruction could cure the officer's comment; and (3) the comment represented an extreme example of a deliberate and calculated injection of inadmissible polygraph evidence to prejudice the defendant and bolster the complainants' credibility. *Id*. at 173. The appellate court stated that because the officer's "comment did not reveal whether [the defendant] submitted to a polygraph exam, much less the results, if any, the trial court's two immediate instructions to disregard the reference were sufficient to cure any error." *Id*. at 174.

[10]In *Williams v. State*, the defendant complained the trial court erred by denying his motion for mistrial after a deputy testified that defendant refused to submit to a polygraph examination. 798 S.W.2d 368, 372 (Tex. App.–Beaumont 1990, no pet.). The trial court sustained the defendant's timely objection to the deputy's response, instructed the jury to disregard the testimony, but denied the motion for mistrial. *Id*. In denying relief, the appellate court stated that "this was not an extreme case where the testimony was clearly calculated to inflame the minds of the jury to the point of rendering any curative instruction useless. . . . Thus, the testimony referring to [the defendant's] refusal . . . to submit to a polygraph examination was rendered harmless by the trial court's instructions to disregard. *Id*. at 373.

the accused argued to the court of criminal appeals that the trial court erred when it denied his request to impeach a witness's trial testimony with evidence that the witness had provided deceptive answers during a polygraph test "without getting into the specifics of these answers."  133 S.W.3d 618, 625 (Tex. Crim. App. 2004).  The court of criminal appeals judicially noticed that "'there is simply no consensus that polygraph evidence is reliable'"[11] and stated that "[we] cannot conclude that the trial court abused its discretion to exclude the polygraph evidence."  *Id*. at 626; *see Nesbit,* 227 S.W.3d at 66 n.4 (stating that the results of a polygraph test are not admissible in a Texas criminal proceeding); *see also United States v. Scheffer*, 523 U.S. 303, 309 (1998) (holding that the exclusion of polygraph did not unconstitutionally abridge the right of a defendant to present a defense because "[t]here is simply no consensus that polygraph evidence is reliable").  Because we are bound by existing precedent[12] establishing a per se rule of inadmissibility,[13] issue three is overruled.

## IV. Denial of Motion for New Trial

In his fourth issue, Whatley contends the trial court abused its discretion by denying his motion for new trial on the remaining nine counts, after granting the motion for new trial with respect to the six counts of prohibited sexual conduct, which were time barred.

---

[11]*Ross v. State*, 133 S.W.3d 618, 626 (Tex. Crim. App. 2004) (quoting *United States v. Scheffer*, 523 U.S. 303, 309 (1998)).

[12]In *Garza v. State*, No. 13-06-584-CR, 2007 WL 2429366 *2 (Tex. App.–Corpus Christi Aug. 28, 2007, no pet.) (mem. op., not designated for publication), we stated that "[b]ecause of their inherent unreliability and tendency to be unduly persuasive, polygraph examination results are inadmissible for any purpose in a criminal proceeding on proper objection."  (citations omitted).

[13]*See Hernandez v. State*, 10 S.W.3d 812, 818 (Tex. App.–Beaumont 2000, no pet.).

*A. Standard of Review*

A trial court's decision to grant or deny a defendant's motion for new trial is reviewed only for an abuse of discretion. *State v. Herndon*, 215 S.W.3d 901, 906 (Tex. Crim. App. 2007). This discretion, however, is neither unbounded nor unfettered, and it must ultimately be in the interest of justice and in accordance with the law. *Id*. at 907. We do not substitute our judgment for that of the trial court; rather, we look to whether the trial court's decision was arbitrary or unreasonable. *Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006). In reviewing the decision, we look to the evidence that most favors the trial court's decision, and "presume that all factual findings that could have been made against the losing party were made against the losing party." *Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004). We find an abuse of discretion only when "no reasonable view of the record could support the trial court's ruling." *Holden*, 201 S.W.3d at 763.

Whatley argues that "the sheer volume of the counts against [him] likely inflamed the jury which punished [him] to the maximum [extent] allowable." He further argues that "[t]he six prohibited sexual conduct counts likely influenced the jury. The trial court could have remedied that prejudice by granting a new trial on the remaining nine counts." Whatley fails to cite any supporting authority for this argument.

*B. Analysis*

To preserve an issue for appellate review, "the brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(h). "An argument that fails to cite supporting authority presents nothing for review." *Rocha v. State*, 16 S.W.3d 1, 20 (Tex. Crim. App. 2000)

11

(citing Tex. R. App. P. 38.1(h); *McFarland v. State*, 928 S.W.2d 482, 512 (Tex. Crim. App. 1996); *see Dunklin v. State*, 194 S.W.3d 14, 23 (Tex. App.–Tyler 2006, no pet.); *Willis v. State*, 192 S.W.3d 585, 597 (Tex. App.–Tyler 2006, pet. ref'd); *Dennis v. State*, 151 S.W.3d 745, 752 (Tex. App.–Amarillo 2004, pet. ref'd); *King v. State*, 17 S.W.3d 7, 23 (Tex. App.–Houston [14th Dist.] 2000, pet. ref'd) (op. on reh'g). Because Whatley has failed to cite supporting authority for his argument, his issue is inadequately briefed and presents nothing for review. TEX. R. APP. P. 38.1(h); *Rocha,* 16 S.W.3d at 20 (argument that fails to cite to supporting authority in support of claim presents nothing for review).

Nevertheless, the code of criminal procedure requires the jury to "return a finding of guilty or not guilty in a separate verdict as to each count and offense submitted to them" and that "[p]unishment shall be assessed on each count on which a finding of guilty has been returned." TEX. CODE CRIM. PROC. ANN. art. 37.07, §§ 1c, 2c (Vernon Supp. 2008). In this case, the punishment charge allowed the jury to assess punishment on each separate offense. Absent some authority requiring a trial court to grant a new trial when, in a multi-count indictment, it finds that some convictions are time barred and others are not, we cannot conclude that the trial court abused its discretion in denying Whatley's motion for new trial with respect to the remaining nine counts. Issue four is overruled.

## V. Presumption of Innocence

In a supplemental letter brief, Whatley contends the admission of Detective Hess's testimony relating to the polygraph examination denied him the right to the presumption of innocence. *See* U.S. CONST. amend. XIV. Under the Due Process Clause of the Fourteenth Amendment, a defendant in state court has the right to the "presumption of innocence," *i.e.*, the right to be free from criminal conviction unless the prosecution can

12

prove the defendant's guilt beyond a reasonable doubt by probative evidence adduced at trial. *Miles v. State*, 204 S.W.3d 822, 825 (Tex. Crim. App. 2006) (citing *Taylor v. Kentucky*, 436 U.S. 478, 483 n.12, 485-86 (1978)). Texas law explicitly provides for the right to the presumption of innocence. *See* TEX. CODE CRIM. PROC. ANN. art. 2.03(b) (Vernon 2005).

Here, defense counsel did not object to Detective Hess's testimony relating to the polygraph. When counsel requested the instruction to disregard this testimony and when he moved for a mistrial, he did not argue that Whatley's right to the presumption of innocence demanded exclusion of this testimony. "'[T]he party complaining on appeal . . . about a trial court's admission, exclusion, or suppression of evidence must, at the earliest opportunity, have done everything necessary to bring to the judge's attention the evidence rule or statute in question and its precise and proper application to the evidence in question.'" *Reyna v. State*, 168 S.W.3d 173, 177 (Tex. Crim. App. 2005) (citing *Martinez v. State*, 91 S.W.3d 331, 335-36 (Tex. Crim. App. 2002)). A party forfeits an argument by failing to bring it to the trial court's attention. *Martinez,* 91 S.W.3d at 336-37; *Dinkins v. State*, 894 S.W.2d 330, 355 (Tex. Crim. App. 1995) ("A defendant must make a timely objection in order to preserve an error in the admission of evidence."). Furthermore, "[o]rdinary rules of evidence, . . . by simply permitting evidence to be admitted at trial, do not at all subvert the presumption of innocence, because they do not concern whether the admissible evidence is sufficient to overcome the presumption." *Carmell v. Texas*, 529 U.S. 513, 533 n.23 (2000). Even assuming the detective's testimony infringed upon Whatley's presumption of innocence, "constitutional guarantees can be waived by failure to object properly at trial." *Saldano v. State*, 70 S.W.3d 873, 887 (Tex. Crim. App. 2002).

13

Fundamental error may be raised for the first time on appeal. *See* TEX. R. EVID. 103(d) (providing that an appellate court may take notice of fundamental errors affecting substantial rights although the errors were not preserved at trial). Fundamental errors are violations of rights which are "waivable only"[14] or denials of absolute systemic requirements[15]—both of which need not be preserved by objection. *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004); *Saldano*, 70 S.W.3d at 888; *Marin v. State*, 851 S.W.2d 275, 280 (Tex. Crim. App. 1993), *overruled on other grounds*, *Cain v. State*, 947 S.W.2d 262 (Tex. Crim. App. 1997). Thus, the question before us is whether Whatley's right to avoid the complained of evidence is a right that is either waivable only or an absolute, systemic requirement. *See Saldano*, 70 S.W.3d at 889. Whatley refers us to no authority holding that his right to avoid the polygraph testimony is either a waivable-only right or an absolute, systemic requirement. To the contrary, "failure to object to polygraph evidence waives the error." *Sanchez v. State,* 222 S.W.3d 85, 90 (Tex. App.–Tyler 2006, no pet.); *Berotte v. State*, 992 S.W.2d 13, 17 (Tex. App.–Houston [1st Dist.] 1997, pet. ref'd) ("admission of testimony about polygraph results is not considered reversible error in the absence of an objection").

The court of criminal appeals has "consistently held that the failure to object in a timely and specific manner during trial forfeits complaints about the admissibility of evidence. This is true even though the error may concern a constitutional right of the

---

[14]Examples of rights that are waivable only include the rights to the assistance of counsel and to a jury trial. *Saldano v. State*, 70 S.W.3d 873, 888 (Tex. Crim. App. 2002).

[15]Examples of absolute systemic requirements include jurisdiction of the person, jurisdiction of the subject matter, a penal statute's being in compliance with the Separation of Powers Section of the state constitution, a constitutional requirement that a district court must conduct its proceedings at the county seat, the constitutional prohibition of ex post facto laws, and certain constitutional restraints on the comments of a judge. *Id*. at 888-89.

defendant." *Saldano*, 70 S.W.3d at 889. Because Whatley did not object to the detective's testimony, we hold he has failed to preserve his complaint for review. *See Mendez*, 138 S.W.3d at 342 ("[e]xcept for complaints involving systemic (or absolute) requirements, or rights that are waivable only, . . . all other complaints, whether constitutional, statutory, or otherwise are forfeited by failure to comply with Rule 33.1(a)"). We overrule the supplemental issue.

VI.  Conclusion

We affirm the trial court's judgment.

ROSE VELA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Memorandum Opinion delivered and
filed this 29th day of January, 2009.

15