NUMBER
13-02-499-CR

                                 COURT OF
APPEALS

                     THIRTEENTH DISTRICT OF
TEXAS

                         CORPUS CHRISTI B EDINBURG

 

DANIEL SOLIS
REYNA,                                                                   Appellant,

                                                             v.

THE STATE OF TEXAS,                                                                    Appellee.

 

 

                    On appeal from the 138th District
Court

                                       of
Cameron County, Texas.

 

 

 

                                M
E M O R A N D U M   O P I N I O N

 

                      Before Justices Hinojosa,
Rodriguez, and Wittig

 

         

 

         Opinion by Justice Wittig








                
A jury found appellant, Daniel Reyna, guilty of two counts of misusing
official information,[1]
two counts of tampering with governmental records,[2]
and one count of securing execution of a document by deception.[3]  Appellant appeals these convictions in three
issues.  We affirm the judgment of the
trial court below.

I.  Background

Appellant was the city administrator for the City of
Los Fresnos.  As city administrator,
appellant was in charge of the day-to-day operations of the City.  Appellant=s
position allowed him access to the City=s funds, thus entitling him to hire contractors to
perform various work projects for the different departments under appellant=s supervision. 
Around October 2001, appellant contracted with Armando Ramirez to pave a
tennis court that also doubled as a basketball court, which the City
owned.  Ramirez was also awarded a city
contract to build a dog pound for the City. 
The evidence showed that Ramirez either completed or substantially
completed the work on the court.  The
evidence also showed that Ramirez performed work to build the pound; however,
there was contradictory testimony as to the sufficiency and quality of Ramirez=s work. 
Nonetheless, the evidence showed that the paving of the court was not
accounted for in the general budget. 
Appellant took funds from a reservoir account under the City=s Parks and Recreation Department to finance the
paving of the court.  The evidence also
showed that Ramirez received more money than was budgeted for the building of
the pound.  Furthermore, the evidence
showed that appellant did not abide by the City=s competitive
bidding policy in procuring the work for Ramirez.  








Appellant=s arrangement with Ramirez came to light in the fall
of 2001.   Michael Meyn, a resident of
the City, filed an Open Records request[4]
to view the public records for the work done to the court.  The Abids@ which appellant turned over to Meyn pursuant to the
request were forged bid proposals from at least two companies.  The bid proposal from Ramirez=s company may have also been forged.  Meyn immediately realized the bid documents
were false, as they were all written on the same invoice pad, and the  respective companies= letterheads were simply photocopied from their
advertisements in the phonebook.  In order
to substantiate his suspicions, Meyn telephoned these respective companies and
confirmed that they had not placed any bids with the City for work
projects.  Meyn then reported this
information to the appropriate authorities who subsequently prosecuted
appellant. 

II.  Legal Sufficiency 








Appellant=s first issue is that the evidence is legally
insufficient to sustain a guilty verdict of the offenses of misuse of official
information, tampering with governmental records, and securing execution of a
document by deception.  When an appellate
court reviews a conviction for legal sufficiency, the court views the evidence
in the light most favorable to the verdict and determines whether any rational
trier of fact could have found the essential elements of the offense beyond a
reasonable doubt.  See King v. State,
29 S.W.3d 556, 562 (Tex. Crim. App. 2000) (citing Jackson v. Virginia,
443 U.S.307, 319 (1979)).  An appellate
court considers all evidence presented at trial, but may not re-weigh the
evidence and substitute its judgment for that of the jury.  See King, 29 S.W.3d at 562.  We measure the legal sufficiency of the
evidence by the elements of the offense as defined by a hypothetically correct
jury charge.  See Malik v. State,
953 S.W.2d 234, 240 (Tex. Crim. App. 1997). 


a. Misuse of Official Information 

For the offense of misuse of official information,
the State was required to prove beyond a reasonable doubt the elements of the
Texas Penal Code section 39.06. 
Therefore, the State had to prove beyond a reasonable doubt that
appellant (1) was a public servant, (2) he relied on information to which he
had access by virtue of his office, (3) the information had not been made
public, and (4) he acquired or helped another acquire a pecuniary interest
because of the information.[5]

The evidence, when viewed in the light most
favorable to a guilty verdict, shows that appellant was undeniably a public
servant.  A public servant is not
specifically defined in section 39 of the penal code, but the jury charge
defined public servant as Aa person elected, selected, appointed, employed, or
otherwise designated as . . . (a) an officer, employee, or agent of [the]
government . . . .@  Thus, there
is no serious contention that appellant, as city administrator, was not a
public servant per the definition in section 39.06 of the Texas Penal
Code.      








Additionally, the evidence shows that appellant
relied on information to which he had access to by virtue of his position,
which had not been made available to the public, in order to gain a pecuniary
advantage or to help another person gain a pecuniary advantage.  The evidence showed that as part of his
official duties, appellant had access to bids submitted to the City for various
work projects, in particular, the bids for the pavement of the court.  The evidence also showed that appellant
controlled the bid process with respect to the pavement on the courts and the
building of the pound. 

The evidence also shows that appellant forged the
bids from two other companies to create an appearance that he was following the
City=s bidding policy. 
Then, based on these sham bids, appellant was able to ensure that
Ramirez=s bid was the lowest and, therefore, winning
bid.  Thus, appellant and Ramirez relied
on the information, which appellant had access to by virtue of his office, in
order to manipulate the bidding process.








   Appellant
contends, however, that he cannot be found guilty of the offense of misusing
official information because the bids were public information, which eliminates
the essential element that the information not be generally accessible to the
public.  Appellant asserts that the bids
would later be made available to the public, to Meyn in particular, by virtue
of an Open Records request, and therefore, the element that the information had
not been made public is wanting. 
Appellant, however, fails to note the purpose of competitive bidding is
to keep the bids and the information therein secret, before the winning or
lowest bid is awarded.  At the moment
appellant fabricated the bids, the bids should not have been public information.  In fact, both the City=s policy and section 522.104 of the government code
specifically exempt from public disclosure any information that would give
advantage to a competitor or bidder if released.  Thus, during the bidding process itself,
which was controlled by appellant, other bids are prohibited from disclosure by
law, and therefore, the public does not have access to them. 

            Finally, the last element, which
requires someone to gain a pecuniary advantage, is clearly met.  Ramirez inured a pecuniary benefit by
receiving contract work from appellant. 
Thus, appellant=s forged bids insured that Ramirez would gain the
contract work and a profit from performing the work.   Additionally, the State presented evidence
that showed that appellant personally cashed the checks made out to Armando
Ramirez Construction, and thus, he profited directly from the scheme.  Accordingly, we conclude, there is legally
sufficient evidence to show that the State proved beyond a reasonable doubt all
of the essential elements that appellant committed the crime of misusing
official information.         

b. Tampering with Governmental Records

Appellant contends that the evidence regarding
tampering with governmental records was legally insufficient because the State
failed to prove that he made, presented, or used any record, document or thing
with knowledge that it was false or that he acted with intent that the item(s)
be taken as a genuine governmental record.








The jury convicted appellant of two counts of
tampering with a government record in violation of section 37.10[6]
of the penal code.[7]  Specifically, the jury found that a bid in
the amount of $12,305, purporting to come from Mission Paving Co., Inc., and a
bid in the amount of $11,987, purporting to come from R&R Paving Co., were
governmental records that had been tampered with. 

When viewing the evidence in the light most
favorable to the verdict, the State proved, beyond a reasonable doubt, that
appellant intentionally and knowingly falsified the two bid amounts from
Mission and R&R.  These bids then
were used as a genuine record or document in the bidding process for the
asphalt work on the court.  Employees
from both companies, who controlled their respective company=s bidding or had personal knowledge of the projects
on which their companies submitted a bid, testified that Mission and R&R
never submitted bids to perform work on the courts in the City.  They testified that their respective
companies never made either a written, electronic, or telephone bid. 








Additionally, the evidence established that
appellant presented the bids to the City Finance Director, Candy Medina, as
part of the City=s competitive bidding policy, in order to acquire
checks to pay for the project. 
Furthermore, the evidence showed that appellant tendered the falsified
bids to Meyn in response to his Open Records request.  Thus, appellant attempted to pass these false
bids as genuine governmental records to Medina and Meyn, when in fact they were
forged documents, not genuine records. 
Therefore, the evidence, when viewed in the light most favorable to the
verdict, proves that appellant made, presented, and used documents under
circumstances showing that he had knowledge of their falsity and the intent
that they be taken as genuine governmental records.  Accordingly, there is legally sufficient
evidence to show that the State proved beyond a reasonable doubt all of the
essential elements that appellant committed two offenses of tampering with
governmental records.

c. Securing Execution of Document by Deception         

Finally, appellant argues that the State failed to
provide legally sufficient evidence to prove the essential elements of the
offense of securing execution of a document by deception as proscribed in
section 32.46 of the Texas Penal Code. [8]








When viewing the evidence in the light most
favorable to the verdict, the evidence shows that appellant requested that the
City=s finance director, Candy Medina, execute checks
payable to Armando Ramirez Construction. 
Medina testified that she requested appellant provide proper
documentation, namely the bids of three companies pursuant to the City=s policy on competitive bidding, in order to issue
such checks.  The State argued that since
appellant did not have three bona fide bid proposals, he forged the proposals
from Mission and R&R in order to procure checks from Medina.  

Medina testified that she would not have executed
the checks if she believed the documentation provided by appellant was not
true.  Thus, appellant=s actions directly and proximately caused Medina to
execute checks she would not have otherwise executed.  Moreover, Los Fresnos Mayor Manuel Abrego
testified that he would not have authorized his signature, which was also
needed in order to execute the checks, if he knew the bids were improper.  Therefore, appellant=s feigned bids created a false impression that the
bidding process for the work projects was proper.  This caused others to execute checks that
they otherwise would not have.  Thus,
when viewing the evidence in the light most favorable to the verdict, the
evidence proves beyond a reasonable doubt 
that appellant was guilty of securing execution of a document by
deception.  

When viewing the evidence in the light most
favorable to the verdict, we find that a rational trier of facts could have
found the essential elements of the above mentioned offenses beyond a
reasonable doubt.   Accordingly, we
overrule appellant=s first issue that the evidence was legally
insufficient to sustain a guilty verdict of the offenses of misuse of official
information, tampering with a governmental record, and securing execution of
document by deception.

III.  Factual Sufficiency








Finding the evidence legally sufficient, we proceed
to appellant=s factual sufficiency claims.  Appellant asserts that the evidence is
factually insufficient to sustain a guilty verdict of the above mentioned
crimes.  Under a factual sufficiency
standard of review, the appellate court reviews Aall
the evidence, both for and against the finding,@ to
see if the evidence demonstrates that the proof of guilt is so obviously weak
or so greatly outweighed by contrary proof as to undermine confidence in the
jury=s determination. 
See King, 29 S.W.3d at 563 (quoting Johnson v. State, 23
S.W.3d 1, 11 (Tex. Crim. App. 2000) (en banc)). 
The reviewing court is not free to set aside a verdict merely because it
feels that a different result is more reasonable.  Clewis v. State, 922 S.W.2d 126, 135
(Tex. Crim. App. 1996).  Thus, the
reviewing court is to take a neutral approach when reviewing the evidence and
can only reverse the fact finder if it is Amanifestly unjust,@ Ashocks the conscience,@ or Aclearly demonstrates bias.@  See
Thompson v. State, 93 S.W.3d 16, 21 (Tex. Crim. App. 2001).  Finally, a decision is not manifestly unjust,
shocking to the conscience, or clearly biased merely because the fact finder
resolved conflicting views of the evidence in the State=s favor.  See Cain v. State, 958 S.W.2d 404, 407
(Tex. Crim. App. 1997).   We are mindful
of the jury=s unique role as fact finder and their power and
duty to resolve conflicts in the evidence. 
See Johnson, 23 S.W.3d at 9; Mosley v. State, 983 S.W.2d
249, 254 (Tex. Crim. App. 1998) (en banc) (ruling that questions regarding
credibility of witnesses and weight to be given to their testimony are to be
resolved by the finder of facts); see also Esquivel v. State, 506 S.W.2d
613, 615 (Tex. Crim. App. 1974).  We must
assume that the jury resolved all conflicts and inferences in favor of the
verdict, and we must defer to them the powers to do so.  See Matchett v. State, 941 S.W.2d 922,
936 (Tex. Crim. App. 1996) (en banc).  We
also apply a hypothetically correct jury charge 
analytical construct in the context of a factual sufficiency review.  See Adi v. State. 94 S.W.3d 124, 131
(Tex. App.BCorpus Christi 2002, pet.
ref=d).








The State=s evidence was thoroughly
discussed above.  We now turn and examine
the appellant=s proffered evidence at trial.  Appellant called four witnesses to testify on
his behalf.  None of these witnesses
offered testimony to disprove or counter the State=s claim that appellant
fabricated the bids from Mission and R&R. 
In fact, the first two of appellant=s witnesses merely
testified as to the accuracy or credibility of Meyn=s testimony.  However, Meyn only unraveled appellant=s scheme when he requested
to view the public documents for the work project.  Whether Meyn previously knew of or heard of
appellant, as appellant=s witnesses contended
contrary to what Meyn stated, is irrelevant as to appellant=s guilt of the crimes.  Furthermore, appellant=s last two witnesses merely
testified that Ramirez did other contract projects for the City and that
appellant previously owned a business before becoming the city
administrator.  These two witnesses did
not offer anything to contradict or counter appellant=s role in the scheme.

Therefore, in this case,
the same facts that make the evidence legally sufficient also make it factually
sufficient.  The evidence supporting the
verdict was not so weak as to be clearly wrong and manifestly unjust, nor was
the contrary evidence so strong that the standard of
proof beyond a reasonable doubt could not have been met.  Accordingly, appellant=s second issue is
overruled.

IV.  Search and Seizure








In appellant=s third issue, he asserts
that the trial court erred by admitting into evidence various items that were
obtained at his office and from inside his desk without a search warrant or
consent.[9]  Appellant
asserts that his rights under both the federal and state constitutions have
been violated. 

The proper harm analysis in
reviewing a case when evidence is obtained from an illegal search or seizure is
a constitutional analysis.  See Bumper
v. North Carolina, 391 U.S. 543, 550 (1968); Hernandez v. State, 60
S.W.3d 106, 108 (Tex. Crim. App. 2001). 
Thus, when a trial court errs in denying a motion to suppress evidence
that was illegally obtained, an appellate court must reverse unless the court
determines beyond a reasonable doubt that the error did not contribute to the
conviction or punishment.  See Tex. R. App. P. 44.2(a); Hernandez,
60 S.W.3d at 108.  








In this case, we hold that
regardless of whether there was a constitutional violation, the trial court=s admission of seven
exhibits constituted harmless error.  The
evidence which appellant objected to were State=s Exhibits 39 through 45.  These exhibits consist of an official record
for appellant=s business, a written quote and proposal from
appellant=s business, and three blank
checks from appellant=s defunct business
account.  These exhibits were not at
issue in this trial because they were irrelevant to the question of whether
appellant manufactured bid documents that were used to procure work for his
friend and acquired checks for those work projects.  Further, the evidence adduced at trial
demonstrated appellant provided false bids to the City=s finance director in order
to procure the execution of certain checks, and appellant tendered these same
manufactured bids to Meyn and held them out to be genuine governmental
records.  Thus, there was ample evidence,
both legal and factual, to convict appellant of the aforementioned crimes, with
or without the admission of these objectionable items.  Appellant=s issue on this ground is
overruled.       

V.  Conclusion

In sum, we hold that there
was both legally and factually sufficient evidence to convict appellant of the
crimes with which he was charged and that the admission of evidence seized from
his office constituted harmless error. 
Accordingly, we affirm the judgment of the trial court.

 

 

Don Wittig

Justice

Do not publish.

Tex. R. App. P. 47.2(b).

 

Memorandum Opinion
delivered and filed

this 5th day of
January, 2006.











[1]Tex. Pen.
Code Ann. ' 39.06 (Vernon 2004). 





[2]Tex. Pen.
Code Ann. ' 37.10 (Vernon 2004).





[3]Tex. Pen.
Code Ann. ' 32.46 (Vernon 2004). 





[4]See Tex. Gov=t Code
Ann. ' 552 (Vernon 2004).





[5]Section 39.06 requires the
following elements:

 

a.         A public servant commits an offense if,
in reliance on information to which he has access by virtue of his office or
employment and that has not been made public, he:

1.                 
acquires or aids another to acquire a pecuniary
interest in any property, transaction, or enterprise that may be affected by
the information; . . . 

d.         In this
section, information that has not been made public means any information to
which the public does not generally have access, and that is prohibited from
disclosure under Chapter 552, Government Code.

 

Tex. Pen. Code Ann. ' 39.06 (Vernon 2004). 





[6]Section 37.10 of the penal code
states the following:

 

2.                 
A person commits an offense if he:

(1)        knowingly
makes a false entry in, or false alteration of, a governmental record;  

(2)        makes, presents, or uses any record,
document, or thing with knowledge of its falsity and with intent that it be
taken as a genuine governmental record;

(3)        intentionally destroys, conceals, removes,
or otherwise impairs the verity, legibility, or availability of a governmental
record;

(4)        possesses, sells, or offers to sell a
governmental record or a blank governmental record form with intent that it be
used unlawfully;

(5)        makes, presents, or uses a governmental
record with knowledge of its falsity; or

(6)        possesses, sells, or offers to sell a
governmental record or a blank governmental record form with knowledge that it
was obtained unlawfully.

See Tex. Pen. Code Ann. ' 37.10 (Vernon Supp. 2004-05).





[7]The jury also found appellant not
guilty on two other counts of the offense of tampering with governmental
records with respect to bids or quotes for the contract on the dog pound. 





[8]Section 32.46 provides as
follows:   

 

(a)               
A person commits an offense if, with intent to defraud
or harm any person, he, by deception:

(1)              
causes another to sign or execute any document
affecting propertyor service or the pecuniary interest of any person . . . 

 

(d)              
In this section, Adeception@ has the meaning assigned by Section
31.01.

See Tex. Pen. Code Ann. ' 32.46 (Vernon Supp. 2004-05).

Section 31.01
(1) of the Texas Penal Code defines Adeception@ to mean, among other things: 

(A)       creating or confirming by words or
conduct a false impression of law or fact that is likely to affect the judgment
of another in the transaction, and that the actor does not believe to be true
[or];

(B)       failing to
correct a false impression of law or fact that is likely to affect the judgment
of another in the transaction, that the actor previously created or confirmed
by words or conduct, and that the actor does not now believe to be true. 

See Tex. Pen. Code Ann. ' 31.01(1) (Vernon Supp. 2004-05).

 





[9]Ordinarily, when an appellate court
reviews a trial court=s ruling on a motion to suppress
evidence, the reviewing court Agives almost total deference to a trial court=s determination of historical facts@ and reviews the court=s application of the law of search
and seizure de novo.  O=Hara v. State, 27 S.W.3d 548, 550 (Tex. Crim.
App. 2000) (citing Guzman v. State, 955 S.W.2d 85, 88-89 (Tex. Crim.
App. 1997)); see also State v. Ballard, 987 S.W.2d 889, 891 (Tex. Crim.
App. 1999).   However, in this case we do
not address whether the search and seizure was constitutional.  Instead, as discussed below, we hold that it
was harmless error to admit the challenged evidence, if indeed it should have
been excluded.