Opinion issued October 23, 2008 
 




















In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-04-00235-CR
  __________
 
KIMBERLY LYNN ALLEN, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee
 

 
 
On Appeal from County Criminal Court at Law No. 10
Harris County, Texas
Trial Court Cause No. 1148972
 

 
 
OPINION ON REMAND
          A jury found appellant, Kimberly Lynn Allen, guilty of assault, and the trial
court assessed punishment at 180 days’ confinement, suspended the sentence, and
placed appellant on community supervision for one year, with a $500 fine, 80 hours
of community service, and various other conditions of community supervision. In
three points of error, appellant complained that the evidence was legally and factually 
insufficient to disprove the defense of consent and the trial court failed to charge the
jury that, if the State had failed to persuade the jury beyond a reasonable doubt that
the complainant did not consent to the assault, it was required to acquit appellant. We
reversed the judgment on grounds that appellant was egregiously harmed by the trial
court’s failure to properly instruct the jury on the defense of consent, but the court of
criminal appeals found that appellant did not suffer “actual egregious harm” as a
result of the omission, and accordingly, reversed our judgment and remanded the case
to this Court. Allen v. State, 253 S.W.3d 260, 266 (Tex. Crim. App. 2008). On
remand, we affirm the trial court’s judgment.
Background
          Kimberly Ryan and her fiancé went to a Denny’s Restaurant in the early-morning hours of December 14, 2002. When Ryan and her fiancé arrived, the
restaurant was not crowded, and she noticed three women sitting at a nearby table. 
Ryan testified that the women, appellant and two companions, were so loud that her
fiancé had to move to sit closer to her so that she could hear him talk. The noise
continued, so Ryan turned around and said “do you mind” to the “raucous” and
“obnoxious” women. Appellant, who was sitting at the other table, responded by
announcing, “I’m not going to let some white f***ing bitch tell me what I’m going
to do. I’m going to kick her f***ing a**.” Ryan testified that she was afraid, and the
“verbal assault” escalated. She called for emergency assistance because she “felt like
[she] was about to get hurt.” 
          Ryan testified that the Denny’s manager/waitress told appellant and her
companions that they were going to have to leave, appellant responded “you can’t
make us leave,” and that a “tug-o-war ensued with a plate.” Appellant told the
waitress “you are not going to f***ing make us leave. I’m going to kick your f***ing
a**.” The waitress was doused with the contents of a coffee cup and appeared
“shocked, frightened, dismayed.” As appellant was leaving, she walked back to
Ryan’s fiancé and said “I’m not going to let a white, motherf***ing, faggot tell me
what to do. And just because I take it up the a**, doesn’t mean I’m going to take it
from that white motherf***er.”
          Appellant walked to the front of the restaurant, and Ryan saw someone else
walk up to the front as well. Ryan testified that she “didn’t hear the words that were
said, but the body language that I saw, the other person kind of reared her hands back
and, I don’t know what was said but, [appellant] came around and just . . . it wasn’t
a full on punch . . . she just whacked her in the side of the head” and caused her to
bleed above her eyebrow. She explained that it did not look like the other person was
preparing to hit appellant, but, instead “it was like, go ahead and hit me.” The woman
did not take a swing at or hit appellant. The police arrived within seconds and took
appellant away. Ryan testified that appellant was “fighting” with the police and
“kicking in the air” and “flailing” as they led her to a patrol car. 
          Jackie Dubendorf, the complainant, testified that she and two friends arrived
at the Denny’s for breakfast around 3:30 a.m. after getting off work. She was talking
with her friends when she heard voices “hollering at each other and threatening
people” on the other side of the restaurant. She heard them say, “I’m going to
f***ing kill the waitress.” The complainant saw the three women walk up to the
cashier and call him a “f***ing faggot.” The complainant felt sorry for the cashier,
so she got up and told appellant “that she wasn’t impressing anybody.” Appellant
responded, “I sure the f*** ain’t trying to impress you. I ought to walk over there and
slap the f*** out of you.” The complainant then “stood back with [her] arms out to
[her] side and said, then, slap me.” Appellant hit her over the left eyebrow, which
caused the complainant’s pierced eyebrow ring to rip out and bleed. The complainant
ducked down, and appellant swung at her again, and the complainant swung back
making contact with appellant. The police arrived and restrained appellant. 
Appellant screamed, “Get the f*** off of me. Why aren’t you jumping on that white
b***h.” The complainant watched appellant “wrestling and struggling with the
police.”
          Appellant was arrested and charged with misdemeanor assault. The jury was
instructed on the defenses of self-defense and consent. 
                                                  Factual Sufficiency
          The Court of Criminal Appeals held that appellant was not actually harmed by
the trial court’s erroneous instruction as to the defense of consent. Accordingly, on
remand, we are directed to address appellant’s remaining point of error challenging
the factual sufficiency of the evidence to disprove the defense of consent.
Standard of Review
           In conducting a factual sufficiency review, we view all of the evidence in a
neutral light. Ladd v. State, 3 S.W.3d 547, 557 (Tex. Crim. App. 1999). Our factual
sufficiency review must include a discussion of the most important and relevant
evidence that supports the appellant’s complaint on appeal. Sims v. State, 99 S.W.3d
600, 603 (Tex. Crim. App. 2003). Our neutral review of all the evidence, both for and
against the challenged elements, looks to determine whether proof of guilt is so
obviously weak as to undermine confidence in the jury’s determination, or whether
proof of guilt, although adequate if taken alone, is greatly outweighed by contrary
proof. See Zuniga v. State, 144 S.W.3d 477, 484–85 (Tex. Crim. App. 2004); see
also Zuliani v. State, 97 S.W.3d 589, 593–94 (Tex. Crim. App. 2003). 
          When a defendant challenges the factual sufficiency of the rejection of a
defense, the reviewing court employs the same standard of review articulated in
Zuniga because once the defendant has met his or her burden of production of
evidence as to a defense, the State bears the burden to prove appellant's guilt of the
charged offense beyond a reasonable doubt. See Zuniga, at 484; Zuliani, 97 S.W.3d
at 595. A guilty finding is an implicit rejection of the defense. Zuliani, 97 S.W.3d
at 594.
          We remain mindful of the jury’s role to resolve conflicts in testimony. See 
Mosley v. State, 983 S.W.2d 249, 254 (Tex. Crim. App. 1998) (declaring that
questions concerning the credibility of witnesses and the weight given their testimony
are to be resolved by the trier of fact); see also Esquivel v. State, 506 S.W.2d 613,
615 (Tex. Crim. App. 1974). We must assume that the fact finder resolved conflicts,
including conflicting inferences, in favor of the verdict, and must defer to that
resolution. Matchett v. State, 941 S.W.2d 922, 936 (Tex. Crim. App. 1996). The fact
finder alone determines the credibility of the witnesses and may choose to believe all,
some, or none of the testimony presented. Cain v. State, 958 S.W.2d 404, 407 n. 5
(Tex. Crim. App. 1997). We may not conclude that the evidence is factually
insufficient simply because we disagree with the verdict. Watson v. State, 204
S.W.3d 404, 417 (Tex. Crim. App. 2006). 
Defense of Consent
          Appellant argues that, when reviewed in a neutral light, the evidence is
insufficient to support the jury’s implied finding against the defense of consent.           Assault is defined as intentionally or knowingly causing bodily injury to
another. Tex. Pen. Code Ann. § 22.01(a) (Vernon Supp. 2008). Consent as a
defense to prosecution requires the victim’s effective consent, or, if the conduct did
not threaten or result in serious bodily injury, the actor’s reasonable belief that the
victim consented to the conduct. Id. § 22.06(1) (Vernon Supp. 2008). The defense
of consent requires effective consent which is defined by the Texas Penal Code as
consent by a person legally authorized to act. Id. § 1.07(a)(19)(A) (Vernon Supp.
2008). Consent is not effective when induced by force, threat, or fraud. Id. The issue
of consent as a defense is an issue of fact to be determined by a jury. See Saxton, 804
S.W.2d at 913 (The “issue of self-defense is an issue of fact to be determined by the
jury.”). 
          If the issue of the existence of a defense is submitted to the jury, the trial court
shall charge that, if there is a reasonable doubt on the issue, the defendant should be
acquitted. Tex. Pen. Code Ann. § 2.03(d). After the issue has been properly raised
by the evidence, the State is not required to disprove a defense beyond a reasonable
doubt. Saxton, 804 S.W.2d at 913. It is the defendant’s burden to produce evidence
raising the defense, after which the burden shifts to the State. Id. The burden placed
on the State is not one of producing evidence to refute the defensive claim, but rather
to prove its assault case beyond a reasonable doubt. Id.
          Here, it is undisputed that appellant slapped the complainant. Appellant
contends that the statement made by the complainant—“then slap me”—and the
testimony of several witnesses who testified that the complainant urged “go ahead,” 
“come on,” “slap me,” and “hit me” conclusively prove that the complainant
consented to, and even “invited” the assault. The State argues that statements such
as “hit me” are not forms of consent when the alleged consent occurred after the
assaultive conduct began, and that such statements are merely “smart-alec” remarks
that cannot reasonably be construed as an actual invitation to assault someone. The
evidence reveals that appellant did, in fact, threaten the complainant before the
complainant told appellant to “go ahead” and slap her, and we must defer to the jury’s
role in assessing the testimony of the actors and witnesses to determine the
plausibility of the appellant’s argument that complainant had effectively invited the
assault. Indeed, as the Court of Criminal Appeals observed, “Common experience
tells us that such apparent bravado . . . far more likely constitutes a backhanded
warning of potentially dire consequences . . .” than an actual invitation to assault. 
Allen v. State, 253 S.W.3d 260, 268 (Tex. Crim. App. 2008). 
          Viewing the evidence neutrally, we conclude that the State’s evidence was not
too weak to support the jury’s rejection of appellant’s defense of consent, nor was the
proof of guilt, although adequate if taken alone, against the great weight and
preponderance of the evidence. Accordingly, we hold that the evidence is factually
sufficient to support appellant’s conviction. 
          We overrule appellant’s remaining point of error.                                                                                          Conclusion
          We affirm the trial court’s judgment.
 
 
 
                                                                        George C. Hanks, Jr.
                                                                        Justice

Panel consists of Chief Justice Radack and Justices Jennings and Hanks.

Publish. Tex. R. App. P. 47.2(b).